## Commonwealth *v.* Abney et al., Appellants.

318

Argued March 20, 1961.  Before RHODES, P. J., ER-
VIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and
FLOOD, JJ.

*Leon H. Fox, Jr.,* with him *Fox and Fox,* for appellants.

*Jules Bell,* Assistant District Attorney, with him *Harold W. Spencer,* District Attorney, for Commonwealth, appellee.

OPINION BY WOODSIDE, J., June 15, 1961:

This is an appeal by five of 14 defendants who were sentenced after a jury found them guilty of participating in a riot. The appellants contend that the judgments of sentence imposed upon them should be arrested, or in lieu thereof, that a new trial should be granted each of them.

Following a football game on September 25, 1959, in Norristown between the high schools of that borough and of Ridley Township, a continual series of violent and turbulent acts was perpetrated by a group of Norristown boys. The conduct of these boys far surpassed the exuberance of excited partisans which sometimes explodes following athletic contests, and which is generally accepted and endured, sometimes even enjoyed, by the spectators.

This group of Norristown boys attacked the Ridley Township students. The attack was violent, brutal and indecent. The assailants charged into the visiting color guards and band members, knocking at least one girl to the ground. They indecently assaulted the uniformed girls by feeling their breasts and pulling at their shorts. One assailant grabbed a girl by the arm and pulled her down the street. A number of the girls became hysterical. Five of the boys knocked one of the Ridley Township students to the ground twice and jumped on him and beat him. They hit another student in the mouth, another on the hand, another on the shoulder, another on the arm, another on the leg, another in the eye. They hit another of the Ridley Town-

ship boys over the head with a pipe, causing him to temporarily lose the sight of an eye. When the visiting boys and girls sought refuge in their automobiles and buses, the assailants followed them into the buses and cars, and continued the attacks. In one of the buses, they felt the girls' breasts and pulled at their pants, and kicked the boys. The Ridley Township bus windows were broken, and students were hurt by flying glass. A number of stitches were required to close the wound of one of the injured students. A bottle was thrown at a police car.

As aptly stated by the court below, "It may be needless to observe that this occasion was terrifying to the Ridley Township pupils and to adults who supervised and accompanied them."

As those accused of participating in this violence were juveniles, a petition was presented to the Juvenile Court of Montgomery County to have them declared delinquent. Most of the accused denied their participating in the disturbance, and following a practice in Montgomery County not here questioned, the cases of those denying their guilt were certified to the Court of Quarter Sessions for trial and disposition. See §18 of the Act of June 2, 1933, P. L. 1433, 11 P.S. §260; *Trignani's Case,* 150 Pa. Superior Ct. 491, 28 A. 2d 702 (1942); *Commonwealth v. Krynicky,* 158 Pa. Superior Ct. 633, 46 A. 2d 37 (1946). (The appellants were all over 14 years of age at the time of the brawl.)

Fifteen boys were indicted for participating in a riot and for conspiracy to participate in a riot. They pleaded not guilty, and were tried before a jury. The trial judge directed a verdict for one of the defendants on both charges and for all of the defendants on the conspiracy charge. The jury found the other fourteen defendants guilty of participating in a riot, and after refusing motions in arrest of judgment and for a new trial, the court sentenced them. Jackie Butler was

committed to Montgomery County Hall, and the other four appellants were sentenced to 2 to 23 months in jail. We granted a supersedeas to the appellants. The other defendants who received jail sentences served their prison terms.

The Act of June 24, 1939, P. L. 872, §401, 18 P.S. §4401, provides that "Whosoever participates in any riot, rout, unlawful assembly or affray, is guilty of a misdemeanor . . ." As the statute does not define riot, we must look to the common law for the elements of the offense. Blackstone says, "A riot is where three or more actually do an unlawful act of violence, either with or without a common cause or quarrel; as if they beat a man . . . or do any other unlawful act with force and violence, or even do a lawful act, as removing a nuisance, in a violent and tumultuous manner." Book IV, p. 146.

" 'A riot is commonly defined as a tumultuous disturbance of the peace by three or more persons assembled and acting with a common intent; either in executing a lawful private enterprise in a violent and turbulent manner, to the terror of the people, or in executing an unlawful enterprise in a violent and turbulent manner.' " *Commonwealth v. Kahn,* 116 Pa. Superior Ct. 28, 31, 176 A. 242 (1935). See 77 C.J.S. Riot §1.

There can be no doubt that a riot occurred at Norristown on the night of September 25, 1959, following the Norristown-Ridley Township football game, and that the evidence supports the jury's conclusion that the appellants actively participated in it.

Appellants Wm. Abney, Charles Abney and David Jackson were identified by one of the teachers in their school as among the boys who ran into the color guards and band members. A witness testified that Jackie Butler, another appellant, was fighting with the Ridley Township boys, and that he threw a beer bottle at

a police car. Jackie admitted being present and striking a boy. One of the participants testified Jackie was in the riot. Appellant Thompson was caught coming out of a Ridley Township bus by a police officer summoned by the bus driver. There is also evidence that Thompson grabbed a Ridley Township boy during the riot.

Counsel for the appellants advances numerous reasons why the Commonwealth's witnesses should not have been believed. The argument has no place here. The credibility of the witnesses was for the jury.

The appellants argue that the Commonwealth must establish that they "assembled and acted with a common intent," and that there was no evidence of such assembly or intent. Ignoring Blackstone's definition that there can be a riot "with or without a common cause," and assuming the contention that there can be no riot without a "common intent," we have no difficulty in finding that the defendants had a common intent. An intent is a mental state, which can be inferred from conduct. Those participating in the turbulence are presumed to have intended the violence that their acts produced, and which together constituted "a tumultuous disturbance of the peace." Even though some of the rioters may have attacked their victims because they attended a different school, and others may have attacked their victims because they were of a different race, the intent of all the participants, as demonstrated by their conduct, was to act in a violent and turbulent manner. That intent was common to all. The defendants were at approximately the same place at the same time engaging in the same type of unlawful conduct. These facts establish that the defendants "assembled."

The Act of June 15, 1951, P. L. 585, §1, 19 P.S. §871, provides: ". . . if the court, after consideration of the entire record, shall decide that there is not sufficient

evidence to sustain the conviction, it shall forthwith discharge the defendant and dismiss the case." In considering the entire record under this statute, the court must ignore the evidence of the defendant and his witnesses which the jury had the privilege of rejecting, and must accept as correct all the evidence which supports the verdict, and must draw from the evidence such reasonable inferences as will support the verdict. *Commonwealth v. Ornato,* 191 Pa. Superior Ct. 581, 583, 159 A. 2d 223 (1960), 400 Pa. 626, 163 A. 2d 90 (1960); *Commonwealth v. Doria,* 193 Pa. Superior Ct. 206, 208, 163 A. 2d 918 (1960).

No purpose can be served by further summarizing the over 800 pages of testimony. We have examined the testimony relating to appellants, and are satisfied that there was sufficient evidence against each of them to support the verdicts of the jury.

The appellants contend that the refusal of the court below to grant a severance constituted an abuse of discretion requiring a new trial. Where two or more persons are jointly indicted for any offense, except felonious homicide, it is in the discretion of the court to try them jointly or severally. Act of March 31, 1860, P. L. 427, §40, 19 P.S. §785. All the defendants in this case were charged with conspiracy and with participating in a crime which, by definition, cannot be committed by less than three people. A joint trial is permissible, if not necessary, where the defendants are charged with participating in the same conspiracy and riot, and where much of the same evidence is applicable to all defendants. *Commonwealth v. Kloiber,* 378 Pa. 412, 415, 106 A. 2d 820 (1954); *Commonwealth v. Giambrone,* 183 Pa. Superior Ct. 283, 294, 130 A. 2d 254 (1957).

The appellants argue that the conduct of the district attorney who tried the case was so unfair and prejudicial that a new trial should be granted. Coun-

sel for appellant sets forth 14 acts which he considers unfair. It would unduly prolong this opinion to discuss each of these allegations. From an examination of the record, we cannot find conduct which requires this case to be retried. Furthermore, no objections were made during the trial to most of the conduct now claimed to be prejudicial.

With commendable diligence but with questionable prolixity, counsel sets forth 28 alleged trial errors. To answer each allegation would serve no useful purpose. We find among them no persuasive reason to grant a new trial.

The evidence establishes that the appellants participated in a riot, and we can find nothing in the mass of complaints concerning the trial which, upon examination of the record, requires the granting of a new trial.

Judgments of sentence affirmed, and it is ordered that appellants appear in the court below at such time as they may be there called and that they be by that court committed until they have complied with their sentence or any parts thereof which had not been performed at the time the orders of supersedeas were entered.